**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristy Gonzales, | No. CV-20-02411-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Kristy Gonzales's appeal from the Commissioner of the Social Security Administration's (SSA) denial of social security disability benefits. The appeal is fully briefed, (Doc. 17, Doc. 21, Doc. 22), and the Court now rules.

**I.    BACKGROUND**

The issues presented in this appeal are whether substantial evidence supports the Administrative Law Judge's ("ALJ") determination that Plaintiff was not disabled before July 31, 2013, and after November 2, 2014, and whether the ALJ committed legal error in her analysis. (Doc. 17 at 10).

**A. Factual Overview**

Plaintiff was 55 years old at the time of her application (AR 474–75) with a high school education and has a history of work as a back-office bank teller (AR 474, 584, 586). Plaintiff filed her social security disability claim on December 14, 2013, alleging disability due to fibromyalgia with pain in her neck and back, in addition to carpal tunnel

syndrome in both hands (AR 80–81).

The ALJ initially issued an unfavorable decision. (AR 217–38). The Appeals Council reviewed the decision and remanded the matter to the ALJ for a new hearing. (AR 239–44). After two hearings, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled from July 31, 2013, through November 2, 2014, but not disabled before or after that date. (AR 30–52). The Appeals Council denied the request for review and adopted the ALJ's decision as the agency's final decision. (AR 1–6).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled.

*Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### C. The ALJ's Application of the Factors

At the first step, the ALJ concluded that Plaintiff did not engage in substantial gainful activity during the relevant period. (AR 39). At the second step, the ALJ determined that Plaintiff's fibromyalgia, lumbar radiculopathy, lumbar spondylosis, peripheral neuropathy, obesity, degenerative disc disease of the lumbar and cervical spine, status post choroidal melanoma with retinal detachment OS, hypertension, gastroesophageal reflex disease ("GERD"), hypothyroidism, status post cholecystectomy, foot impairment, and chronic pain syndrome constituted severe impairments under 20 C.F.R. 404.1520(c). (AR 542).

At the third step, the ALJ determined that Plaintiff's impairments did not meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 42). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform

light work as defined in 20 C.F.R. 404.1567(b). (AR 51). At the fourth step, the ALJ found that, beginning November 3, 2014, Plaintiff could return to her past relevant work and was not disabled. (AR 51).

## II. LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff raises four potential errors in the ALJ's analysis: (1) the ALJ did not afford sufficient weight to two of Plaintiff's doctors; (2) the ALJ improperly rejected Plaintiff's subjective symptom testimony; (3) the ALJ improperly rejected the testimony of lay witnesses; and (4) the ALJ's vocational hypothetical was incomplete. (Doc. 17 at 1–2). The Court addresses each in turn.

### A. Medical Opinions

Plaintiff first argues that the ALJ improperly rejected the medical evidence of two

of Plaintiff's doctors: Shaunna Sukey Haley, Psy.D. and Madhavi Kurli, M.D. (Doc. 17 at 11).

### 1. Dr. Haley

The ALJ gave Dr. Haley's opinion minimal weight because it was based on a one-time examination of Plaintiff and was inconsistent with Plaintiff's treatment records. (AR 41). The ALJ addressed Dr. Haley's opinion as follows:

> In a consultative examination (mental) dated September 9, 2014, Shaunna Sukey Haley, Psy.D., a licensed psychologist, examined the claimant. She diagnosed the claimant with major depressive disorder, recurrent episode, moderate with anxiety distress, mild. She opined that the claimant had mild to moderate limitations in her ability to maintain attention and concentration. She determined that the claimant had moderate limitations in her ability to perform activities within a schedule. (Exhibit 14F) The undersigned gives this opinion minimal weight as it is based on a one-time examination of the claimant. Furthermore, the undersigned notes even if the limitations assessed by Dr. Haley were accepted: there is no reason to believe the limitations persisted for 12 months. Treatment notes dated January 28, 2015, indicate the claimant denied depression, mania or mood swings. (Exhibit 15F/2)

(AR 41).

Plaintiff argues that the ALJ erred in her analysis because Dr. Haley's treatment examination was not for mental health as the ALJ asserted; but rather, was to discuss imaging results related to Plaintiff's eye cancer. (Doc. 17 at 12). Additionally, Plaintiff argues that Dr. Haley noted on the form that these limitations were expected to last for at least 12 continuous months. (Doc. 17 at 12). Finally, Plaintiff contends that the ALJ rejecting Dr. Haley's opinion in part because it was based on a one-time examination is erroneous given that the ALJ accepted the opinions of non-examining state agency doctors who never saw the Plaintiff. (Doc. 17 at 12).

The ALJ correctly rejected Dr. Haley's testimony because the objective medical evidence did not corroborate her opined-to limitations. The ALJ noted that Plaintiff's symptoms—which Dr. Haley said were expected to last for at least 12 continuous months—were gone less than five months later. (AR 41). This was a permissible basis for discounting Dr. Haley's opinions. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir.

2012). Though Plaintiff argues that the ALJ mischaracterized the note arising from an eye treatment, the Court is unpersuaded. The eye examination encompassed a review of mental health symptoms and the ALJ was noting the mental health symptoms. (AR 981).

Further, substantial evidence supports the ALJ's determination. The ALJ found that the medical records demonstrate that Plaintiff's mental impairments were "non-severe." (AR 41). These findings undermine Dr. Haley's opinion because they weigh upon symptoms and limitations she opined to. Plaintiff argues that the ALJ erred in accepting the "opinions of the non-examining state agency doctors" while rejecting Dr. Haley's opinion "in part because it was based on a one-time examination." (Doc. 17 at 13). But as Plaintiff notes, the ALJ rejected Dr. Haley's opinion for other reasons beyond her providing a one time-examination, (Doc. 17 at 13), and the ALJ provided additional reasons supported by substantial evidence as to why she was rejecting Dr. Haley's opinion. (AR 41). Further, the ALJ noted that the state agency physician Dr. Yandell was "consistent with the record as a whole." (AR 41). The ALJ's interpretation of the evidence is entitled to deference because it is a reasonable interpretation. *See Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1198 (9th Cir. 2004).

2. Dr. Kurli

While the ALJ gave the 2014 Dr. Kurli opinion great weight as of the date of treatment, the ALJ gave Dr. Kurli's opinion minimal weight prior to July 31, 2013, since he did not begin treatment with Plaintiff until this date. (AR 45). Regarding Dr. Kurli's opinion, the ALJ stated as follows:

> In a Vision Impairment Questionnaire dated February 18, 2014 Madhavi Kurli, M.D. diagnosed the claimant with choroidal melanoma in the left eye. He gave the claimant a guarded prognosis. He noted he sees the claimant for three-month follow up visits. He indicated that the claimant cannot see peripherally in the left eye and has extremely limited vision in the left eye. He opined that the claimant could rarely perform work involving near acuity, far acuity, and color vision and should never perform work involving depth perception, accommodation, and field of vision. He found that the claimant is not capable of avoiding ordinary hazards in the workplace and has difficulty walking up and down stairs. He determined that the claimant could not work with small objects such as those involved

- 6 -

> in doing sedentary work and could not work with large objects. He opined that the claimant should rarely lift and carry less than 10 pounds, occasionally stoop and crouch, and would sometimes need unscheduled breaks during an 8-hour working day, as often and as long as needed. In addition, he concluded that the claimant's symptoms were severe enough to constantly interfere with attention and concentration needed to perform even simple work tasks. (Exhibit 2F/2-4)
>
> Dr. Kurli is given great weight from July 31, 2013 to November 2, 2014 and minimal weight prior to July 31, 2013, as this doctor did not begin treatment with the claimant until this date and minimal weight to Dr. Kurli after November 2, 2014, as the doctor reported in a subsequent statement that the only restriction remaining was that the claimant should not perform work that required depth perception or with hazards. (Exhibit 88F) This is consistent with the medical expert's opinion and the conclusion reached in this decision.

(AR 44–45).

Plaintiff argues that the ALJ failed to account for the time in between November 2014 and Dr. Kurli's most recent statement in 2020. (Doc. 17 at 14). Specifically, Plaintiff claims that Dr. Kurli's 2017 indicated that Plaintiff still had "many significant impairments in depth perception and field of vision." (Doc. 17 at 14). Because Plaintiff contends that Dr. Kurli's opinions establish that disabling visual restrictions continued through at least April 2017, the ALJ erroneous found that Plaintiff's "visual disability ended on November 3, 2014." (Doc. 17 at 15).

The ALJ provided clear and convincing reasons for discounting Dr. Kurli's opinion for the relevant time. But the ALJ gave great weight to the opinion of State Agency physician, Earnest Griffith, M.D. noted that Plaintiff's left eye "does not retain the visual fields to avoid hazards in the workplace," (AR 45), and on reconsideration, to Teresa Pavese, M.D. who made similar opinions. (AR 45). The ALJ then relied on Plaintiff's medical records and opinions from 2014 to 2020 to support her decision. (AR 50–51). The ALJ assigned great weight to medical expert Bernard Zuckerman, M.D., a board-certified ophthalmologist who testified that Plaintiff's vision in her left eye was damaged. (AR 50). But he also testified that her vision in her right eye was normal and that "there was no basis for claiming disability." (AR 50). Finally, the ALJ cites to exams

1    and reports from 2014 through 2016 which indicated improvement in the Plaintiff's
2    visual impairment. (AR 46–47).

3          The ALJ also addressed Dr. Kurli's 2017 opinion and assigned great weight that
4    Plaintiff would be unable to perform work requiring depth perception. (AR 51). But
5    Plaintiff's disability was a culmination of her symptoms of her visual impairment as well
6    as her other impairments. (AR 47–50). As noted by the ALJ, Plaintiff's other
7    impairments were effectively managed during this time, leading to a finding that Plaintiff
8    was not disabled. The ALJ did not err by rejecting aspects of Dr. Kurli's opinion.

### B. Subjective Symptom Testimony

Next, Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective symptom testimony. (Doc. 17 at 15). Plaintiff claims that the ALJ did not specify "which testimony she found not credible and has not provided clear and convincing reasons supported by evidence in the record to support her rejection" of Plaintiff's testimony. (Doc. 17 at 16).

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a Plaintiff's subjective symptom testimony. "First, the ALJ must determine whether the Plaintiff has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). If the Plaintiff presents such evidence, the ALJ then evaluates the Plaintiff's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a Plaintiff produces objective medical evidence of an underlying impairment, an ALJ may not reject a Plaintiff's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

At the first step, the ALJ determined that Plaintiff's "medically determinable

impairments could reasonably be expected to produce some the alleged symptoms." (AR 47). At the second step, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

After a considerable discussion of the record evidence in this case, the ALJ concluded:

> The claimant has a history of spine disorders but the balance of diagnostic studies do not support limitations beyond those assessed in the residual functional capacities assessed herein.
>
> Diagnostic imaging studies have not yielded findings which support the claimant is more limited than found in this decision. X-rays of the lumbar spine dated March 6, 2014, revealed dextroscoliosis, lumbar spondylosis at L5 on S1,"without evidence of instability". (Exhibit 3F/16) Studies of the cervical spine dated March 13, 2014 revealed degenerative disc disease at C5-C6 and C6-C7, "some" diffuse arthropathy and "minor" anterolisthesis of C7 on T1 likely secondary to facet arthropathy with "no significant instability" with flexion and extension (Exhibits 3F/17, 7F/6). An x-ray of the chest on May 6, 2014 revealed only mild abnormalities. (Exhibit 7F/10)
>
> The claimant has a history of GERD, hypothyroidism and status-post cholecystectomy but an MRI of the abdomen dated May 6, 2014 shows "stable" findings, mild patch hepatic steatosis, no focal lesion seen of the liver, spleen, pancreas, adrenal glands or kidneys, no new lymphadenopathy and enlarged periportal lymph nodes as "unchanged". (Exhibit 7F/9). During a follow-up visit in July 2014, it was noted the claimant had an episode of abdominal pain. (Exhibit 9F/1) However, overall, there is insufficient evidence to support that the claimant's GERD, hypothyroidism and status post cholecystectomy have resulted in limitations beyond those found in finding 16.
>
> The record reflects that the claimant has been treated for essential hypertension. Treatment notes dated July 31, 2014 show the claimant was diagnosed several years ago. The evidence indicates the claimant as "tolerating the medication" without side effects. The record also shows the claimant's compliance with treatment has been good (Exhibit 9F/1). On September 23, 2015, it was once again noted the claimant has a history of hypertension well controlled with medication. (Exhibit 20F/60).

(AR 48).

Plaintiff argues that the ALJ improperly rejected Plaintiff's testimony as the ALJ failed to "identify any specific records contrary" to Plaintiff's statements. (Doc. 17 at 16). Plaintiff further argues that the ALJ failed to specify which "testimony she found not credible." (Doc. 17 at 16). Finally, Plaintiff argues that the "activities of daily living" the ALJ relied on are not actually inconsistent with Plaintiff's testimony. (Doc. 17 at 16).

The Court finds that the ALJ provided clear and convincing reasons for not crediting Plaintiff's symptom testimony. Based on a thorough review of the medical and testimonial evidence, the ALJ reasonably determined that Plaintiff's allegations were largely uncorroborated by the objective evidence. (AR 49). Though ALJs may not rely solely on a lack of medical evidence as a basis to reject symptom testimony it is a permissible consideration. *Burch*, 400 F.3d at 682. The ALJ cited to medical records that indicate Plaintiff's allegations did not correspond to objective findings. The ALJ cited to Plaintiff's eye exams which noted that visual impairment improved. (AR 47). Additionally, the ALJ cited x-ray imaging which revealed minor or mild abnormalities. (AR 48). The ALJ also reasonably determined that Plaintiff's allegations were inconsistent with her documented improvement with treatment. This was a sufficient basis for the ALJ to reject Plaintiff's testimony and it was supported by substantial evidence. *See Batson*, 359 F.3d at 1198 The ALJ identifies several records that indicate that Plaintiff responded well to treatment procedures and medications. (AR 47, 48, 49).

The Court disagrees with Plaintiff that the ALJ failed to cite to specific records contrary to specific statements. Further, these records and the ALJ's analysis allow the Court to clearly discern why the ALJ concluded that Plaintiff's allegations were inconsistent with her documented improvement. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (reiterating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible). And the Court also concludes that the ALJ's reasoning is supported by substantial evidence. *Batson*, 359 F.3d at 1194. Even if the ALJ could have identified every specific statement by Plaintiff that was contradicted by every item of evidence, a failure to do so is not error since the Court can

reasonably follow the ALJ's reasoning. Accordingly, the ALJ did not err by discounting the Plaintiff's testimony.

### C. Lay Witness Testimony

Plaintiff additionally argues that the ALJ erred in rejecting lay witness testimony. (Doc. 17 at 18). Plaintiff's husband, Gregory Gonzales, completed a questionnaire detailing Plaintiff's "frequent falls, her inability to complete household chores without help or breaks to rest, and her symptoms of depression and anxiety." (Doc. 17 at 18).

The ALJ evaluated Gregory Gonzales's testimony, writing that:
> The third party [sic] statements of the claimant's spouse. Gregory Gonzales, do not establish that the claimant is disabled or not disabled. (Exhibit 4E) Since the claimant's spouse makes no reference to being trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the third party [sic] statement is questionable. Moreover, by virtue of the relationship as a spouse of the claimant, he cannot be considered a disinterested third party whose statement would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. However, he, like the claimant, admitted the claimant is able to do light household chores, feeds her cats and dogs, clean the cat boxes, occasionally walks the dogs, does laundry, prepares simple meals, drives a car short distances and shops in stores. (Exhibit 4E) Thus, this report is afforded partial weight, only to the extent it is consistent with the residual functional capacities assessed herein.

(AR 49–50).

"Competent lay witness testimony cannot be disregarded without comment, and in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1007 (9th Cir. 2015) (internal quotation marks and alterations omitted) (citing *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)). The ALJ, however, need not "discuss every witness's testimony on a [sic] individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

Plaintiff argues that the witness testimony is consistent with the objective medical evidence and the opinions of the doctors. (Doc. 17 at 19). Additionally, Plaintiff contends that the ALJ applied the wrong standard in noting that the lay witness did not have any medical expertise. (Doc. 17 at 18).

In rejecting Mr. Gonzales's testimony, the ALJ considered the close relationship that he had with Plaintiff. (AR 49). The ALJ found that Mr. Gonzales's testimony did not establish that the Plaintiff was disabled because the Plaintiff could complete light household chores. (AR 49). As Plaintiff notes, the limitations and disabilities contained in Mr. Gonzales's testimony are consistent with the opinions of Plaintiff's treating providers. (Doc. 17 at 19). Yet as detailed above, the ALJ found these opinions unpersuasive for reasons supported by substantial evidence. Because the lay witness testimony merely corroborates the medical opinions that the ALJ properly discredited, the Court finds that this evidence would not have changed the ALJ's disability determination. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006))). Even assuming the ALJ's decision to consider but disregard Mr. Gonzales's statement was erroneous, the Court concludes that any error was harmless. *See Marsh*, 792 F.3d at 1173; *Johnson v. Astrue*, No. CV-11-8121-PHX-JAT, 2012 WL 3108838, at *11 (D. Ariz. July 31, 2012) (applying harmless error review to an ALJ's disregard of competent lay witness testimony).

### D. RFC Capacity and Step-Five Finding

Finally, Plaintiff argues that the ALJ's step-five finding is not supported because the ALJ failed to pose a complete hypothetical. (Doc. 17 at 19). Plaintiff argues that the ALJ erred in posing the hypothetical questions to the Vocational Expert (VE) by omitting Plaintiff's "credible allegations, the limitations described by the lay witness, and the limitations assessed by Dr. Kurli and Dr. Sukey Haley." (Doc. 17 at 19).

///

An ALJ may rely on the testimony of a VE at step five. 20 C.F.R. §§ 404.1566, 416.966. However, an ALJ may rely on a VE's testimony only where such testimony is based on a hypothetical that "contain[s] all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Where an ALJ's hypothetical is based on a residual functional capacity assessment that does not include some of the claimant's limitations, the VE's testimony "has no evidentiary value." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008).

As discussed above, the ALJ gave specific and legitimate reasons to discount the opinions of Dr. Kurli and Dr. Haley. Likewise, the ALJ properly discounted the opinions of the Plaintiff's symptom testimony and the lay witness testimony. As a result, it was not necessary for the ALJ to include any additional limitations in the hypothetical to the vocational expert nor include them in the RFC.

**IV.   REMEDY**

Plaintiff asks the Court to credit certain evidence as true and direct a finding of disability. The Court declines to do so because the Court is affirming the ALJ's decision.

**V.   CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the ALJ decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 24th day of March, 2022.

James A. Teilborg
Senior United States District Judge